*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE PETITION OF : | |
| LUDMILA A. TSYMBAL : | |
| : | Case No. 11-cv-3054 |
| : | |
| : | **OPINION** |
| : | |

**WOLFSON, United States District Judge**:

Petitioner Ludmila A. Tsymbal ("Petitioner") requests an Order permitting the pre-Complaint depositions of Raisa Lukin and her son Tony Lukin (collectively "Respondents") pursuant to Fed. R. Civ. P. 27(a). Petitioner asserts that after World War II, Respondent Raisa Lukin's deceased husband, Evgeny Lukin ("Decedent"), left Russia, absconding with family assets. Petitioner believes she is entitled to those assets through inheritance and now seeks to reclaim them. She alleges, however, that before she can properly file suit she needs documents from Swiss banking authorities—which she believes Respondents have the means to locate or alternatively that Petitioner needs additional time to locate these files and because Respondent Raisa Lukin is 79 years old, Petitioner argues her testimony could be lost. Therefore, a Rule 27 deposition is warranted to preserve that testimony. The Honorable Judge Douglas E. Arpert, U.S.M.J., heard Petitioner's arguments and issued a Report and Recommendation denying her request. Petitioner objects to Judge Arpert's Report and Recommendation. For the reasons set forth below, the Court approves and adopts Judge Arpert's December 9, 2011, Report and Recommendation.

1

I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

Unless otherwise noted, all facts set forth below come from Tsymbal's Petition, and do not represent any findings by the Court.  Petitioner is Decedent's sister and a Russian citizen.  She resides in St. Petersburg, Russia.  Respondent Raisa Lukin is Petitioner's sister-in-law and is Decedent's widow.  She is a U.S. citizen and resides in Trenton, New Jersey.  Respondent Anatoly (Tony) Lukin is Raisa and Evgeny Lukin's son, and Petitioner's nephew.  He also is a U.S. citizen and resides in Trenton, New Jersey.

Petitioner contends that during World War II, Decedent collaborated with Nazi German forces occupying the Soviet Union.  During this time, and because of his collaboration, Decedent purportedly amassed considerable wealth.  In particular, he took advantage of German privatization policies, which permitted Russian citizens to reclaim family assets that had been previously nationalized by Soviet authorities.  Petitioner contends that Decedent was the "only surviving male in the family" and reclaimed the family assets, liquidated them, and "moved some of those family assets outside of Russia" before the end of World War II.  First Verified Petition, at 4 (Dkt No. 1).  Then Decedent "fled to Germany" because he otherwise would have been "subject to . . . capital punishment" by Soviet authorities.  Id. at 5.  In June 1945, Decedent "reemerged in Germany where he started to hold himself out as a Lukin" in order to gain access to "the family assets on [his] maternal side."  Id.  Then he fled to "the British zone of West Berlin," after which he moved into "the British zone of occupation of West Germany."  Id.  In May of 1948, Decedent was purportedly "declared wanted in the USSR and in all its zones of occupation in Germany."  Id.

2

Petitioner maintains that Decedent came to the United States sometime after 1948, ultimately established residence in Trenton, and "became a U.S. citizen by . . . 1974." Id. at 6. Decedent died on June 13, 1982 "of strangulation . . . believed to be a suicide." Id. Petitioner believes that at the time of his death Decedent possessed "information about . . . alleged assets in trust in Switzerland." Second Verified Petition, at 2 (Dkt. No. 8). Notably, Petitioner acknowledges that she "has no documents supporting [this] version of events" and instead relies generally upon "judicial decisions in Russia" related to World War II defectors and collaborators. First Verified Petition, at 4-5.

Petitioner contends that she has been "aware of the issues of the alleged inheritance and of the hidden assets" since the end of World War II and maintains that "[a]s the last . . . of the two surviving children of her parents . . . [she] was entitled to half of the inheritance left by her parents and grandparents." Id. at 7. Specifically, Petitioner believes that these assets are "controlled by a trust in Switzerland." Second Verified Petition, at 2 (Dkt. No. 8). However, because of travel restrictions imposed by Soviet authorities until "the collapse of the Soviet Union [in] 1992," Petitioner claims that she could not investigate Decedent's purported Swiss bank accounts. First Verified Petition, at 7. Since that time, Petitioner has "attempted to collect information about any dormant accounts" but has been "unsuccessful." Id. at 8.

On May 25, 2011, Petitioner filed a Petition pursuant to Federal Rule of Civil Procedure 27, requesting permission to depose Respondents. On July 27, 2011, Judge Arpert executed a Stipulation by the parties that permitted Petitioner to serve 25 written interrogatories. Respondents answered those interrogatories on August 10, 2011, under penalty of perjury. Specifically, Respondents answered under oath that they "have no knowledge or information of any . . . assets" in Switzerland or in any other country. Pet. Mot., Annex B, at 5 (Dkt. No. 19-2).

On August 31, 2011, Petitioner moved to reinstate her original Petition to take the depositions of Respondents pursuant to Rule 27(a). Petitioner alleges that she cannot file "an adequately documented lawsuit" in the United States without further information regarding the Swiss bank accounts she believes to contain her family's assets. Second Verified Petition, at 2. Further, in consideration of Raisa Lukin's age, Petitioner argues that it is vital that she be allowed to depose her now in order to collect information on Decedent's assets. And if the Court orders Raisa Lukin to be deposed, then Petitioner argues, I should also order Tony Lukin be deposed in the interest of expediency and economy.

As a related argument, Petitioner argues that Respondent Tony Lukin answered untruthfully in his answers to Interrogatory Questions 17 and 18. Those questions referred to two emails attached to the Petition, allegedly written by Lukin. Lukin denied writing and sending the emails, which Petitioner argues is false. Petitioner submitted two Declarations by the recipients of those emails—one from Russian attorney Sergey Ivanov, and another from Petitioner's daughter Raisa Shumitskaya—and argues that the sender's email address (tony-lukin@webmail.net) belongs to Tony Lukin. Moreover, Petitioner argues that the text of the emails "must have been casually written by an American," insisting that "[t]here is no chance Russians would have been able to write such a casual text in English."[1] Pet. Obj. at 20 (Dkt. No.

---

[1] The first email allegedly reads: "Raisa, I should warn you, that you have got into dangerous game. You see only waves on a surface but do not know that occurs in depth. We are chess pawns whom often endow for a victory. There are some dates, that the Israel agency of intelligence Mossad was involved in death of the my father. His execution was only a part of special covert operation which proceeds now. The American government would not like publicity because the foreign secret-service system is still unknown CIA completely. It is the minimal accessible information which I can inform you. Well think. Sincerely, Tony." (Pet. Obj., at 18 (Dkt. No. 26).

The second email allegedly reads: "Raisa, you want our destruction? Then you will remain without money. I have learned that Lyudmila has died therefore again I wish to meet you for the

26).  Petitioner contends that Tony Lukin's alleged misstatements constitute perjury, and asks that the Court permit his deposition to "inquire directly into that significant issue." Id. at 24.

## II.    LEGAL STANDARD

Pursuant to Rule 72(a) and Local Rule 72.1(c)(1), Petitioners have filed timely objections to the Report and Recommendation.  As such, and with Petitioner's objections in mind, the Court will consider Tsymbal's Petition *de novo*.  See Wedgewood Vill. Pharm., Inc. v. United States, 421 F.3d 263, 266 n.3 (3d Cir. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673-74 (1980)) (noting that when a matter is "dispositive, the role of the Magistrate Judge [is] limited to the issuance of a Report and Recommendation which the District Court . . . review[s] *de novo*.")

Rule 27(a) provides, in relevant part, that a petitioner requesting the perpetuation of testimony prior to filing a Complaint demonstrate: "(A) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought; (B) the subject matter of the expected action and the petitioner's interest; (C) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it; (D) the names or a description of the persons whom the petitioner expects to be adverse parties. . . ; and (E) the name, address, and expected substance of testimony of each deponent." Fed. R. Civ. P. 27(a)(1).

The Third Circuit has not encountered Rule 27 motions with great frequency. Nevertheless, it is clear that Rule 27 "is not a substitute for discovery." Ash v. Cort, 512 F.2d 909, 912 (3d Cir. 1975).  Accordingly, prospective Plaintiffs may not depose witnesses to gain information for a potential Complaint.  See Briscoe v. Winslow Twp., No. 10-2824, 2010 U.S. Dist. LEXIS 86248, at *14 (D.N.J. Aug. 23, 2010) ("Rule 27 is not appropriate for the purpose of

---

decision on your part of the inheritance. I ask you nobody to give the information.  I suggest to solve all peacefully.  Please, stop the madness. Sincerely, Tony."  (Id. at 19.)

discovering facts for a future lawsuit."). Similarly, Rule 27 does not afford potential Plaintiffs an opportunity to "determine whether a cause of action exists, and if so, against whom action should be instituted." In re Vratoric, No. 02:09-mc-00284, 2009 U.S. Dist. LEXIS 98703, at *2 (W. D. Penn. Oct. 23, 2009) (quoting In re Boland, 79 F.R.D. 665, 667 (D.D.C. 1978)).

      Rather, Rule 27 provides a means to preserve evidence relevant to "an actual rather than a hypothetical claim" that a prospective Plaintiff cannot file for "some reason beyond her control." In re Wharton, No. 88-0535, 1988 U.S. Dist. LEXIS 13980, at *3 (E. D. Penn. Dec. 13, 1988) (citing Petition of Johanson Glove Co., 7 F.R.D. 156, 157 (E.D.N.Y. 1945)); see, e.g., DeWagenknecht v. Stines, 250 F.2d 414, 418 (D.C. Ct. App. 1957) (permitting Rule 27 discovery where the Trading with the Enemy Act barred German-American Plaintiff from filing to reclaim property taken by the U.S. Government during World War II); Texaco v. Borda, 383 F.2d 607, 609-10 (3d Cir. 1967) (permitting Rule 27 deposition of a witness where the trial judge barred discovery until the resolution of a criminal case implicating the same Defendants). Specifically, Rule 27 allows Plaintiffs to preserve evidence that may be lost or destroyed before they can properly bring suit. See Application of Deiulemar Compagnia Di Navigazione v. Allegra, 198 F.3d 473, 478 (4th Cir. 1999) (permitting Rule 27 discovery because repairs to a ship, which was central to the dispute, threatened to cause "rapid chang[e]" to "crucial evidence."); Mosseller v. US, 158 F.2d 380, 382 (2nd Cir. 1946) (permitting Rule 27 deposition of Plaintiff's severely injured son pursuant to affidavits by medical professionals indicating he might die before the suit could be filed). Mere "conclusory statements that evidence will be lost based on the passage of time" are insufficient to invoke Rule 27. Briscoe, 2010 U.S. Dist. LEXIS 86248 at *9; see also Application of Checkosky, 142 F.R.D. 4, 7-8 (D.D.C. 1992)

("[G]eneralized concerns about . . . fading memories, and the destruction of documents" do not warrant Rule 27 discovery).

### III. DISCUSSION

The Magistrate Judge found that Petitioner "failed to sustain her burden under Fed. R. Civ. P. 27(a)." The Court agrees. Specifically, Petitioner has failed to provide the Court with a sufficient reason why she cannot "bring [an action] or cause it to be brought" as required under Rule 27(a)(1)(A). See In re Wharton, 1988 U.S. Dist. LEXIS 13980 at *3. Petitioner suggests that she expects to bring a cause of action in Federal District Court based on Russian law and lists numerous hypothetical claims she might bring to collect on her purported interest in Decedent's estate. Pet. Obj., at 11. Assuming, *arguendo*, that those actions are cognizable in Federal Court, Petitioner has not demonstrated why she cannot file them. Petitioner suggests, in passing, that the reason beyond her control is that she needs documentation from Swiss banking officials regarding Decedent's suspected accounts and that Respondents control such information.[2] She felt it "prudent and thoughtful" to use Rule 27 rather than "just filing the premature case." Pet. Reply, at 11 (Dkt. No. 30). Her unsupported conclusion does not justify invoking Rule 27 or show why she cannot bring a cause of action. Indeed, Petitioner devotes an entire section of her Objection to explain why she can bring a claim. Pet. Obj., at 11 ("F. Petitioner's Claims under Russian Law Are Cognizable in the Courts in the United States."). If Petitioner indeed has a valid claim, she may file it and avail herself of the discovery methods provided under Rule 26 to uncover facts relevant to her claim. Petitioner has made no showing,

---

[2] Petitioner also suggests that she needs more time to continue to investigate the Swiss accounts and in the interim she should be allowed to take Respondents' depositions. Petitioner admits she has had since 1992 to freely investigate these matters and so far has been "unsuccessful." Two decades is long enough for Petitioner to amass the facts necessary to bring her complaint; Respondents should not be subjected to a fishing expedition because of Petitioner's inability to find information that might not exist.

7

or even addressed, why she cannot satisfy the notice pleading requirements of Rule 8 and bring a civil case against Respondent without this deposition.  Rule 27 does not allow Petitioner the opportunity to flesh out more facts at her whim, nor to "engage in a 'wholesale fishing expedition.'" 19th St. Baptist Church v. St. Peters Episcopal Church, 190 F.R.D. 345, 347 (E. D. Penn. 2000); see also Briscoe, 2010 U.S. Dist. LEXIS 86248, at *15 ("Rule 26, and not Rule 27, provides the method for discovering facts and that rule may be availed only after action has been commenced.") (quoting In re Vratoric, 2009 U.S. Dist. LEXIS 98703, at *2); Ash, 512 F.2d at 911 ("[T]he scope of discovery under Rule 27 is much narrower than Rule 26 discovery.").  This is precisely what Petitioner is seeking to do here.

Importantly, Rule 27 is a vehicle intended to "prevent a failure or delay of justice." Specifically, "the testimony to be perpetuated must be relevant, not simply cumulative, and likely to provide material distinctly useful to a finder of fact." In re Bay City Middlegrounds Landfill Site v. Kuhlman Elec. Corp., 171 F.3d 1044 (6th Cir. 1999).  The Court acknowledges Petitioner's concerns regarding Raisa Lukin's age.  Under appropriate circumstances, a witness's age can warrant a deposition to preserve the witness's testimony.  See Texaco, 383 F.2d at 609-10 (permitting Rule 27 deposition of a 71-year-old witness when a court order prevented traditional discovery until the resolution of a criminal case on the same matter); see also DeWagenknecht, 250 F.2d at 418 (allowing Petitioner to preserve the testimony of a 74-year-old witness because Petitioner was barred by law from filing a claim until several years later).  In the instant case, any concerns about Raisa Lukin's age are alleviated by Respondents' answers to Petitioner's interrogatories.[3]  Respondents answered, under oath, twenty-five questions by Petitioner, including questions regarding Decedent's assets.  The Court finds that deposing

---

[3] Additionally, any concerns of Ms. Lukin's age are not compelling considering that Petitioner has had at least twenty years to obtain the information she seeks.

Respondents would be cumulative, at best, and harassing, at worst. Respondents' testimony has been preserved for use in litigation, and there is no "failure or delay of justice" to be remedied here.

 Despite this, Petitioner raises several objections to the Report and Recommendation. First, Petitioner insists that the Magistrate Judge relies on inapposite case law, namely In re State of North Carolina, 68 F.R.D. 410 (S.D.N.Y. 1975). The Report and Recommendation cites North Carolina to summarize Respondents' arguments, explain the general circumstances under which Rule 27 discovery is appropriate, and to suggest that "a Rule 27 petition cannot be used for the purpose of ascertaining facts to be used in drafting a complaint." See Report and Recommendation, at 25 (citing In re North Carolina, 68 F.R.D. at 412). Petitioner has failed to explain how Judge Arpert's reliance on In re North Carolina is "contrary to the law." Even if it were, the Report and Recommendation does not rely primarily on that case to support its decision. Indeed, this Court finds that a wealth of other Rule 27 cases, besides In re North Carolina, show that Petitioner's request is without merit. See, e.g., Ash, 512 F.2d at 912; 19th St. Baptist Church, 190 F.R.D. at 347; Briscoe, 2010 U.S. Dist. LEXIS 86248 at *14; In re Vratoric, 2009 U.S. Dist. LEXIS 98703 at *2; In re Wharton, 1988 U.S. Dist. LEXIS 13980 at *3. In short, the Court finds no error, legal or otherwise, in Judge Arpert's reliance on In re North Carolina.

 Next, Petitioner contends that Respondent Tony Lukin provided untruthful answers to Petitioner's Interrogatories. Specifically, Petitioner alleges that Lukin falsely denied writing two emails attached to the Petition. Petitioner contends that the sender's email address and the content of the messages prove that Lukin authored the emails. Petitioner argues that this alleged "perjury" demands further investigation—namely, the depositions of Respondents. Moreover,

9

Petitioner insists that it is "the Court's obligation to see that no false statement were [*sic*] made under oath." Pet. Obj., at 21.

Rule 27 is not the appropriate mechanism to investigate the alleged perjury. Indeed, Petitioner has not provided a single Third Circuit case—or for that matter, a case from any Federal jurisdiction—to support her contention. Petitioner erroneously cites to Averbach v. Rival Mfg. Co., 879 F.2d 1196 (3d Cir. 1989), suggesting that in that case a similar issue "was even put before a jury." Pet. Obj., at 24. Averbach is inapposite to the instant matter. In Averbach, plaintiffs filed a common law fraud claim against defendants after Plaintiff found evidence that defendants had given false responses to an interrogatory. Averbach did not discuss or rely on Rule 27. If anything, this case suggests that indeed Petitioner does have alternative means such as those employed by the plaintiff in Averbach to address Respondent Tony Lukin's supposed perjury, further undermining her argument that Rule 27 is appropriate. Petitioner also points to one Tennessee state court case for the general proposition that "perjury in . . . discovery deposition offends the basic principles underlying our judicial system." Wilder v. Wilder, 863 S.W.2d 707 (Tenn. App. 1992) (discussing perjury in the context of a matrimonial action). As a general proposition, the Court certainly agrees with this very basic principle that perjury constitutes a serious discovery violation. But Wilder does not compel the use of further discovery, here a deposition, in order to address the alleged perjury or even address facts remotely apposite to those before me today. It is strange medicine indeed to remedy perjury by giving the alleged perjurer more opportunities to potentially lie.

Moreover, the Court is not convinced that Petitioner has provided sufficient evidence that Tony Lukin did, in fact, respond untruthfully. The Court does not agree that an email address, in combination with inadmissible lay opinion that the text "must have been casually written by an

10

American," constitute "clear and convincing evidence" of perjury. Pet. Obj. at 20. Regardless, if Petitioner believes that Respondents have answered untruthfully, she can address the matter during Rule 26 discovery after filing a proper complaint.

Petitioner's remaining objections refer to whether she expects to be party to an action "cognizable in a U.S. Court." Fed. R. Civ. P. 27(a)(1)(A). As discussed above, Petitioner has not provided a reason she cannot "bring [an action] or cause it to be brought." As such, the Court need not address the merits of her potential claims, nor whether any of those actions would be cognizable in a U.S. Court of competent jurisdiction. Those decisions are properly deferred until Petitioner files a complaint. Petitioner has not demonstrated sufficient reason why she cannot file a claim with regard to her right to Decedent's assets. However, the Court wishes to be clear that I am in no way suggesting that Petitioner has a meritorious claim or that there would be jurisdiction to keep her claims in this Court. Such a determination would be purely advisory and cannot be made here. The Court finds that Rule 27(a) depositions would only serve as an inappropriate and untimely replacement for formal Rule 26 discovery.

**IV.   CONCLUSION**

For these reasons, the Court approves and adopts the December 9, 2011, Report and Recommendation of the Honorable Judge Douglas E. Arpert, U.S.M.J. An order will be entered consistent with this opinion.


Dated: July 16, 2012                                         /s/ Freda L. Wolfson
                                                             Freda L. Wolfson, U.S.D.J.